UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ADAM DUGAL, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:17 CV 1410 CDP |
|  | ) |  |
| NANCY A. BERRYHILL, | ) |  |
| Deputy Commissioner of Operations, | ) |  |
| Social Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income pursuant to Title XVI, 42 U.S.C. §§ 1381 *et seq*. Because the Commissioner's final decision is not supported by substantial evidence on the record as a whole, I will reverse the decision of the Commissioner and remand for further proceedings consistent with this Memorandum and Order.

### Procedural History

Plaintiff alleged he became disabled beginning January 1, 2016, because of Crohn's disease, ulcerative colitis, depression, joint pain, and social anxiety.

Plaintiff's application was initially denied on April 28, 2016. After a hearing before an ALJ on October 3, 2016, the ALJ issued a decision denying benefits on December 21, 2016. On March 9, 2017, the Appeals Council denied plaintiff's request for review. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the ALJ erred in her assessment of his residual functional capacity (RFC) and failed to properly evaluate the opinion of his treating physician. Plaintiff asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will reverse the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in her Statement of Material Facts (ECF #15) as they are admitted by the Commissioner (ECF #20-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF #20-2), as they are unrefuted by plaintiff. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

**Discussion**

A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that

which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties
> and treating and examining physicians relating to such matters
> as: (1) the claimant's daily activities; (2) the duration,
> frequency, and intensity of the pain; (3) precipitating and
> aggravating factors; (4) dosage, effectiveness and side effects of
> medication; and (5) functional restrictions.

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the

ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.  ALJ's Decision

In her written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2016. The ALJ found plaintiff's Crohn's disease to be a severe impairment, but determined that it did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19.) The ALJ found plaintiff to have the RFC to perform light work with the limitation of having "easy access to the restroom, meaning access within a range of fifty yards." (Tr. 19.) Although the RFC contains a limitation regarding proximity to a restroom, it does not include a limitation with respect to the frequency with which plaintiff could use the restroom, or otherwise provide an accommodation regarding additional breaks or the amount of time plaintiff could spend in the restroom. The ALJ found plaintiff had no past relevant work. (Tr. 22.)

During the hearing, the ALJ posed a hypothetical to the vocational expert whether someone with plaintiff's age, education, and work experience, who needed easy access to restroom and an additional two breaks of five minutes each in addition to regularly scheduled breaks, could perform any jobs in the national

6

economy. (Tr. 66) The vocational expert responded in the affirmative, but only if one break was in the morning and one break was in the afternoon. Otherwise, if both breaks occurred in the same half of the shift, "it would eliminate all jobs." (Tr. 66-67). When asked whether additional unscheduled breaks of every 10 to 30 minutes and more than four unscheduled monthly absences would preclude all work, the VE responded in the affirmative. (Tr. 67)

Considering plaintiff's RFC and his age, education, and work experience, the ALJ relied upon vocational expert testimony to support a conclusion that plaintiff could perform other work as it exists in significant numbers in the national economy, and specifically as a mail clerk, clerical/router, and hotel/motel maid. The ALJ therefore found plaintiff not to be disabled from his onset date through the date of the decision. (Tr. 24.)

C.  <u>RFC Assessment and Evaluation of Treating Physician Opinion</u>

Plaintiff claims that this decision is not supported by substantial evidence because the ALJ improperly formulated his RFC and evaluated the opinion of his treating physician.

Plaintiff argues that the ALJ erred when formulating his RFC because the ALJ failed to include a limitation with respect to the frequency with which he would need to use the restroom. In so doing, the ALJ accorded little weight to the opinion of plaintiff's treating physician regarding the frequency with which

7

plaintiff would need to use the restroom. RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The record must include some medical evidence that supports the RFC. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) (internal citation omitted). Plaintiff claims that the ALJ substantially erred when she determined that he could perform light work with easy access to a restroom without considering how often he would actually need to use the restroom. I agree that the ALJ substantially erred in her formulation of plaintiff's RFC, so remand is required.

Here, the ALJ formulated plaintiff's RFC to take into account his need for close proximity to a restroom, but she failed to account for the frequent and unscheduled nature of plaintiff's need to use the restroom. Substantial evidence on the record as a whole supports plaintiff's need for frequent restroom breaks of an unscheduled nature caused by his Crohn's disease. At the first examination by gastroenterologist Katie Schroeder, M.D., on February 15, 2016, plaintiff reported having 20 bowel movements per day, with 15 bloody stools daily. Plaintiff was diagnosed with ileocolic Crohn's disease. Dr. Schroeder noted that it would be a challenge to treat plaintiff without insurance, as he needed biologics and other more costly medications to effectively treat his Crohn's. She prescribed balsalazide and Prednisone until he could afford better treatment options. (Tr. 295-99) When plaintiff next saw Dr. Schroeder on April 4, 2016, he reported that his bowel movements had decreased to four or five loose stools daily, mostly not bloody. However, he complained of fatigue and joint pain. Dr. Schroeder noted that plaintiff needed further workup but she was unable to schedule due to plaintiff's lack of insurance. She continued his higher dosage of Prednisone. (Tr. 318-22). At his next scheduled visit in June, plaintiff reported regular stooling of five to eight times daily, with tenesmus and diarrhea of 15 bowel movements daily upon a decrease in his Prednisone. (Tr. 554-58). Plaintiff reported to the emergency room on July 29, 2016, complaining of left flank pain, which was

9

diagnosed as a kidney stone. Plaintiff reported a flare up of his Crohn's disease, increased urinary urgency and frequency, and nausea. A CT scan of the abdomen and pelvis taken during that visit revealed several pleural-based nodules in the left lower lobe, and fatty infiltration in the walls of the rectum, sigmoid and ascending colon, suggestive of inflammatory bowel disease (ulcerative colitis). (Tr. 523, 21). After plaintiff was prescribed the biologic medication Humira at no cost for a period of time, he visited Dr. Schroeder for a follow-up visit on September 19, 2016. At that time he had been on the medication for over one month and reported a decrease in bowel movements down to 12 daily, with no bleeding. He still woke up at night to stool and reported extreme tenesmus, urgency, spasm, and kidney stones. Dr. Schroeder noted that plaintiff had "modest success" with Humira and reported that his current main issue was tenesmus. She prescribed a suppository instead of Predisone and scheduled his next visit in 10-12 weeks. (Tr. 562-68)

In connection with plaintiff's application for benefits, Dr. Schroeder filled out a functional capacity questionnaire on September 20, 2016. She diagnosed plaintiff with moderate to severe ileocolic Crohn's disease, with symptoms of severe and bloody diarrhea 20+ times per day, severe tenesmus of 20+ times per day, abdominal pain and cramping, weight loss, loss of appetite, vomiting, peripheral arthritis, malaise, extreme fatigue, sleeplessness, and mucus in stool. She noted that the disease was chronic and may flare. Dr. Schroeder noted that CT

10

scans and plaintiff's colonoscopy supported her diagnosis. Dr. Schroeder believed plaintiff to be incapable of working at even low stress jobs as his "main issue is diarrhea and having access to a bathroom." Dr. Schroeder opined that plaintiff could only sit for 10 minutes at a time due to his tenesmus, and that he could stand/walk about four hours out of an eight hour workday. She noted that plaintiff needed a job which permitted ready access to a restroom and that he would need to take eight unscheduled restroom breaks (every 10-30 minutes) during an eight hour workday. Dr. Schroeder noted that plaintiff was incontinent and had no advance notice of his need for a restroom break. Dr. Schroeder opined that plaintiff would have good days and bad days and would likely be absent from work more than four days per month. She also noted that plaintiff's severe joint pain and fatigue were "big limiters" on plaintiff's ability to work. (Tr.545-49)

At the hearing on October 3, 2016, plaintiff testified that he was back up to 20 bowel movements daily. He testified that Predisone was no longer effective because of the length of time he had been taking it. Plaintiff testified that he spends his days on the couch or in the bathroom. He attended two or three of his daughter's 12-15 volleyball games because of his frequent need to use the restroom and the fact that he is incontinent and has no warning of his need to use the restroom. Plaintiff has a fear of going out in public for this reason. (Tr. 46-52) Plaintiff explained that when he has a flare up, he bleeds out of his rectum and

11

cannot leave the house because he has to use the restroom every time he stands up. Plaintiff reported less rectal bleeding than when he was diagnosed, but he still uses the restroom as frequently. Plaintiff testified that Crohn's is like "dry heaving" because "it keeps pushing it and pushing it and pushing it out until it's all out. I mean you have no control over it." Plaintiff reported that he had used the bathroom eight or nine times by 1:30 p.m. on the day of the hearing, for a total of about 45 minutes in the restroom. He considered that an unusually good day. Plaintiff stated that he continually gets up at night to use the bathroom and that he cannot cut his grass anymore. (Tr. 52-57)

In concluding that plaintiff retained the capacity to perform light work with easy access to a restroom, the ALJ concluded that that plaintiff's condition had "stabilized" and that he demonstrated improvement upon taking Humira. The ALJ pointed to some normal findings upon physical examination, including normal bowel sounds, normal range of motion, and lack of abdominal pain, as evidence that plaintiff's limitations were not as severe as claimed. The ALJ also found that plaintiff's daily activities, which included attending volleyball games, cutting two acres of grass "for a time," and helping cook, do laundry, and wash the dishes, supported the RFC assessment. Finally, the ALJ gave "little weight" to the opinion of Dr. Schroeder, concluding that it was not consistent with claimant's treatment,

pathology, and imaging reports, and that it did not account for plaintiff's "markedly improved condition" while on Humira.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks and citation omitted). "The opinion of a treating physician is accorded special deference under the social security regulations." *Prosch v. Apfel*, 201 F.3d 1010, 1012–13 (8th Cir. 2000). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch,* 201 F.3d at 1013 (internal quotation marks and citations omitted); *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir.2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record). An ALJ is entitled to

give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence. *Kirby v. Astrue,* 500 F.3d 705, 709 (8th Cir.2007) (citing *Vandenboom v. Barnhart,* 421 F.3d 745, 749 (8th Cir.2005)). Whether the ALJ grants a treating physician's opinion substantial or little weight, the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R § 404.1527(d)(2).

The ALJ's decision to discount Dr. Schroeder's opinion regarding plaintiff's frequent and unscheduled need for restroom breaks is not supported by substantial evidence on the record as a whole. Here, the ALJ substantially erred when determining that Dr. Schroeder's opinion was entitled only to slight weight because it was allegedly inconsistent with plaintiff's improved condition and the other medical evidence of record. The substantial evidence of record demonstrates that plaintiff's objective test results (colonoscopy and CT scans) are consistent with Dr. Schroeder's diagnosis of moderate to severe Crohn's disease, and the fact that plaintiff had some normal physical examination results with no complaints of abdominal pain does not discount plaintiff's need for frequent, urgent, and unscheduled use of the restroom, especially given the nature of plaintiff's impairment, which "is often accompanied by periods of inactivity as well as a high rate of recurrence after treatment." *Dix v. Sullivan*, 900 F.2d 135, 136 (8th Cir.

14

1990).

Moreover, the ALJ substantially erred when she determined that plaintiff's condition had "markedly improved" after starting Humira. Plaintiff last visited Dr. Schroeder on September 19, 2016, after being on Humira for over one month. Although he reported a slight decrease in bowel movements, he was still stooling 12 times daily and reported extreme tenesmus, urgency, spasm, and kidney stones. For this reason, Dr. Schroeder noted that plaintiff had only "modest" (not "marked") success with Humira and reported that his current main issue was tenesmus. Even if this could be construed as a "marked" improvement, the ALJ still substantially erred by failing to consider the impact of 12 unscheduled restroom breaks on plaintiff's ability to work. Moreover, just weeks later at the hearing, plaintiff testified that he was back to 20 bowel movements a day even while on Humira, including eight to nine unscheduled restroom breaks by the start of the hearing at 1:30 p.m., for a total of 45 minutes in the restroom. The ALJ substantially erred in mischaracterizing plaintiff's condition as "markedly improved," which led her to include no accommodation in plaintiff's RFC for frequent, unscheduled restroom breaks. Such an error cannot be deemed harmless where the VE testified that even two additional breaks during an eight-hour workday would preclude all work if both breaks occurred during either the morning or the afternoon shifts. Yet there is no evidence in the record to suggest

that plaintiff's need to use a restroom could be scheduled at all, and certainly not to occur only once during the morning part of a shift and once during the evening part of a shift. To the contrary, all of the evidence of record demonstrates that due to diarrhea, tenesmus, and incontinence, the frequency and urgency with which plaintiff required a restroom was completely unpredictable. The ALJ substantially erred when she mischaracterized plaintiff's condition as "markedly improved" and then improperly discounted the treating physician's opinion as inconsistent with plaintiff's condition.

Dr. Schroeder completed her medical source statement on September 20, 2016, the day after plaintiff's last examination of record. After taking into account plaintiff's extreme tenesmus and the frequency and urgency with which he would need to use the restroom, she opined that plaintiff needed a job which permitted ready access to a restroom *and* that he would need to take at least eight unscheduled restroom breaks (about every 10-30 minutes) during an eight hour workday. Dr. Schroeder noted that plaintiff was incontinent and had no advance notice of his need for a restroom break. Dr. Schroeder opined that plaintiff would have good days and bad days and would likely be absent from work more than four days per month. Dr. Schroeder was the only treating provider who rendered an opinion regarding plaintiff's limitations. She has been plaintiff's treating gastroenterologist since he was diagnosed with Crohn's and has a substantial

16

treatment history with plaintiff, which includes regular follow-up appointments and diagnostic testing and lab work. Given Dr. Schroeder's specialized field of practice and the length and nature of her treatment history with plaintiff, she was in the best position to render an opinion as to plaintiff's limitations and it was error for the ALJ to discount it merely because she erroneously concluded that the plaintiff was "markedly" improved. Certainly, no treating physician ever rendered an opinion that plaintiff would *not* need frequent and urgent restroom breaks of an unscheduled nature, and none of the medical records are inconsistent with Dr. Schroeder's opinion, either. It was error for the ALJ to substitute her own judgment for that of plaintiff's treating gastroenterologist on this issue. An ALJ may not substitute her own opinions for the opinions of medical professionals. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990); *see also Pate–Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 1995) (ALJ may not "play doctor").

Moreover, the ALJ improperly mischaracterized plaintiff's testimony regarding his limitations to support her erroneous conclusion that plaintiff's condition was "markedly improved." "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall,* 274 F.3d at 1218. I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When determining the credibility of

17

a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322. While an ALJ need not explicitly discuss each *Polaski* factor in his decision, he nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

18

Here, the ALJ mischaracterized the nature and extent of plaintiff's daily activities as including attendance at his daughter's volleyball games, cutting two acres of grass, and helping with cooking, laundry, and childcare. In fact, plaintiff actually testified that he only attended two or three of his daughter's games due to his urgent and unpredictable need to use a restroom and that he had developed a fear of being in public for this reason. He also testified that he could *not* cut his grass because of his Crohn's disease, and that it affected his marriage because he can no longer sleep with his wife because of his constant need to use the bathroom during the night. He stated that while he attempted to help with cooking and laundry, his fatigue made it difficult to do much. The ALJ substantially erred in evaluating plaintiff's credibility based upon a mischaracterization of his testimony, which fully supported his need for frequent, urgent, and unscheduled use of the restroom. Here, remand is required is because the ALJ failed to properly evaluate the opinion of plaintiff's treating physician and formulate an RFC which accounted for all of plaintiff's limitations, including the frequent and urgent need for unscheduled restroom breaks. Because the ALJ's opinion is not supported by substantial evidence on the record as whole, it is reversed and this case is remanded for further proceedings consistent with this opinion.

## Conclusion

Because the Commissioner's final decision that plaintiff is not disabled is

not supported by substantial evidence on the record as a whole, it is reversed and this case is remanded for further proceedings consistent with this opinion.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed, and this case is remanded for further proceedings consistent with this Memorandum and Order.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of June, 2018.